Burk *v.* Hand.

JOHN L. BURK, appellant,

*v.*

MARY H. HAND, respondent.

1. An unrecorded deed, executed and delivered prior to January 1st, 1800, is good against a subsequent *bona fide* purchaser without notice.

2. The acts of a grantor subsequent to a conveyance by him are not competent to impeach the title of his grantee.

3. In partition, under the act of 1789, the allotment of shares was required to be in the names of the original co-tenants; it was no part of the duty of the justice to determine who owned the different shares at the time of the application for partition.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following opinion:

The complainant comes by his bill to have quieted his title to certain lands. Those besides the complainant who, so far as are known, claimed any interest, have conveyed that interest to Burk, one of the defendants. Burk claims to trace his title, through the ancestors of his grantors, to a deed made by one Silas Swain,

Burk *v.* Hand.

in the year 1768, to Jeremiah Leaming and fifty-one others. This deed was not recorded until the 18th day of October, 1823, about fifty-five years after its execution. What was done with it during this long interval does not appear. This deed purports to convey the one full two and thirtieth part of all that entire island commonly called or known by the name of the Five-Mile Beach, being an entire island from three-quarters flood to one-quarter ebb.

It is to be observed in the outset, and it is a most important fact, that only about four years later, in 1772, proceedings were instituted in the supreme court for the partition of said lands, and that Daniel Swain and Silas Swain were parties to those proceedings, and the land now in question was set off and allotted to said Silas Swain. Nothing whatever appears to show that any one of the grantees named in the deed made by said Silas Swain, in 1768, ever made the slightest claim to any interest in this land under that deed, nor does anything appear to show that Silas Swain disclaimed any interest in the " one full two and thirtieth part " of said entire tract. These partition proceedings show that Silas Swain was present at the time of the division, together with the other owners of the entire tract.

Again, the lands thus partitioned were in the county of Cape May, and the deed upon which the defendant, Burk, relies as passing the title from Silas Swain, shows that Silas Swain, as the grantor, and all of the persons therein named as grantees, resided in the same county at the time of the execution of the deed.

Now, therefore, when it is considered that the deed under which the defendant, Burk, claims was made 1768, and that only four years after there were proceedings for the partition of the lands of which the land in question was an undivided part, and that the said Silas Swain was a party defendant thereto, and that the very land of which the defendant in the present suit now claims a part was set off and allotted to said Silas Swain, in his presence and in the presence of the other alleged owners, not one of whom was of the number to whom said Silas had made said deed, notwithstanding they all lived in the same county and had paid their money (if they had) and had accepted their deed (if

they had) only four years before, and that said deed was allowed to remain unrecorded for full fifty-five years, it seems fair to conclude that said deed represents more than actually took place. The circumstances given are incontrovertible, and to my mind so absolutely inconsistent with the payment of the consideration money and the delivery of the deed that I cannot believe that either took place. I have the conviction, with a full understanding, as I think, of the great force to be given to deeds of conveyance duly executed and authorized, as this one is, and I perceive that the force of the view generally controlling is enhanced by the fact that this deed has endorsed thereon, between the place where the grantor signed and the place where the acknowledgment is written, a receipt which purports to have been signed by the grantor. But it is to be noted that this receipt was written the day of the date of the deed, which was June 4th, 1768, while it was not acknowledged until June 7th. The receipt closes with these words: " I say received the day of the date of these presents—by me, Silas Swain." Hence, since this deed was not acknowledged until June 7th, it is a plain inference, notwithstanding the receipt, that it was not delivered on the 4th, and that the money was not then paid, and that that receipt, just like the one equally as full and explicit in the body of the deed itself, represented what was to be done thereafter.

This conclusion is fortified by the fact that, in the year 1786 (fourteen years after the partition), said Silas Swain conveyed all of said land to one Jacock Swain, and by the further fact that said Jacock Swain held the title until 1809, when he conveyed it to Henry Swain and Joshua Swain, by deed dated July 20th of that year, and recorded the 29th of September of the same year, and by the further fact that these grantees held the title until Henry died, after which, in the year 1828, his administrator sold all the interest which he (Henry) had, and about the same time Joshua sold all of his interest, to one David Cresse. From these facts, it certainly cannot be said that it is going too far to say that if the deed executed by the said Silas Swain to the fifty-two grantees had been delivered, some one or more of

them (living in the immediate neighborhood, as they all did) would have asserted his or their rights and established them.

But it is said that the deed to the fifty-two was recorded in 1823, fifty-five years after its execution. But by whom was it delivered for record? This does not appear. If so, then that fact establishes the fact that one at least of the fifty-two was living fifty-five years after the date of the deed. And if this be true, certainly many of them may have been living; at least, David Cresse, who was one of the fifty-two, may have been living.

Now, in 1828, when the administrator of Henry Swain and Joshua Swain sold and conveyed, they conveyed to one David Cresse, and since nothing to the contrary is shown, and since he is in the same locality, there is nothing violent in the presumption that he is the David Cresse who is named as one of the fifty-two grantees.

It would seem to follow, that had David Cresse claimed anything under the deed made by Silas Swain to him and others in 1768, which deed was recorded in 1823, he certainly would not have purchased and taken title from the administrator of Henry and from Joshua, as he did, paying to each $165 therefor. And this is given peculiar significance by the fact that in the deed from Joshua it is recited in the description of the lands that "the bounds were ascertained by a jury of men from Burlington county, by authority of a writ of partition from the Supreme Court of the term of September, 1772," which is followed by these words: "The above vested right of the parties of the first— to these presents is considered to be the equal undivided half part of the above-described premises." These quotations showed that David Cresse, in accepting this deed, recognized the force and validity of the partition proceedings under which Silas Swain held this particular land, and, also, that he purchased the whole of the undivided one-half of it from Joshua Swain, which makes it clear that he understood he was purchasing the other half from Henry's administrator.

The title passed from Cresse to Rowen, in 1831, and from Rowen to Hoffman, in 1869, and from Hoffman, by virtue of a

sale made by the sheriff under an execution at law, to Hoffman, in 1866, and from Hoffman to the complainant, in December of the same year.

So far as the last-named conveyances affect the question of title, the only criticism made by defendant's counsel is, that it does not appear by the writ of execution, under which the sheriff sold, that he made any levy on these lands. This is answered, so far as this suit is concerned, by the fact that the defendant is out of possession, and, as found above, has no title to stand upon, and, therefore, is not in a position, as against the complainant, who is in possession, to avail himself of any such objection. And this criticism is also answered by the further fact, that before and after the sheriff's sale, the title was in Jonathan Hoffman, he having been the purchaser at the sale, and he making title to Hand, the complainant, would convey all of the estate without doubt, for there was no title in anybody except him.

Considering the character of this land, the complainant has shown such possession as brings him within the statute, and justifies him in filing this bill to quiet his title. I will advise a decree for the complainant, in accordance with the provision of the statute. The complainant is entitled to costs.

*Mr. David J. Pancoast,* for the appellant.

*Mr. John F. Harned,* for the respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

The bill in this case was filed by Joseph Hand, in his lifetime, to quiet his title to a tract of unimproved land at the west end of Five-Mile Beach, in the county of Cape May.

Both parties derive their title through Silas Swain.

Silas Swain conveyed the premises in question to Jeremiah Ludlam and fifty-one other persons, by deed dated June 4th, 1768, and recorded October 18th, 1823. The title passes through this conveyance from Silas Swain to the defendant below, who is appellant here.

Burk *v.* Hand.

In 1772, under proceedings for the partition of lands, of which the land in dispute was an undivided part, the premises involved in this controversy were set off and allotted to the said Silas Swain.

In 1786 the said Silas Swain conveyed the same premises to Jacock Swain, who, by deed dated July 20th, 1809, and recorded September 29th of the same year, conveyed to Henry Swain and Joshua Swain.

In 1828 the title, which Henry and Joshua had, passed by deed to one David Cresse. Through these conveyances the respondent traces the title from the said Silas Swain to the complainant, Hand. The act declaring an unrecorded deed void against a subsequent *bona fide* purchaser for value not having notice thereof, was passed June 7th, 1799 (*Pat. 399 § 8*), and applied to deeds executed on or after January 1st, 1800.

It was not necessary, therefore, to the validity of the deed to the fifty-two grantees as against the subsequent grantee of said Silas Swain, that it should be recorded.

The deed to the fifty-two was duly executed, and will support the title derived through them, unless it is rendered infirm and ineffective by the circumstances relied upon by the respondent. The evidence in this case does not justify the inference that this deed was never delivered.

It was recorded in 1823, and a certified copy of it was produced by defendant in evidence, and, presumably, it has been in his possession and in that of his grantors. Nor are the declarations and acts of Silas Swain, after the delivery of this deed, competent evidence to overthrow it. His relation to the partition proceedings cannot have the effect attributed to it in the court below. There was nothing in that procedure which, so far as appears, called for the intervention of the fifty-two grantees or any of them. They were not parties to those proceedings, and had no notice of them.

Under the act of 1789 (*Elm. Dig. 379*), it has been held that it was the duty of the justice, upon application for commissioners, to ascertain that a co-tenancy existed, and to determine the number of equal shares in which the lands were held by the

original tenants in common, but it was no part of his duty to determine who owned the different shares at the time of the application. The allotment of the shares was required to be in the names of the original co-tenants, but if one was dead or had aliened his share, the heir or purchaser would be entitled to the share allotted to such original co-tenant. *Kennedy* v. *Armstrong, Spen. 693.*

So I think the share set off to Silas Swain, under the writ of partition, in 1772, inured to the benefit of the fifty-two grantees, without any active interposition on their part. There is nothing in those proceedings which bars their right. The description of the premises in their deed is precisely that of the subsequent allotment to Silas, their grantor. The identity of the part previously conveyed to them by Silas, and the part set off to him, can be accounted for only on the assumption that it was so arranged by his procurement, in order to perfect said conveyance.

The only remaining circumstance relied upon by the respondent, is the conveyance from Henry and Joshua Swain to David Cresse, which refers to the partition proceedings. Assuming that he is the same David Cresse who is named as one of the fifty-two grantees, no inference can legally be drawn from said purchase by him, nor from his acts to defeat or impair the rights of his co-grantees. He may have desired to fortify his own previously-acquired title to the undivided fifty-second part, or he may have hoped to gain some advantage to himself by purchasing an adverse title to the whole tract.

The appellant has a title which he has a right to have tried at law.

The decree below should be reversed, with costs.

*Decree unanimously reversed.*